FILED
2009 Jul-06  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ROBYN HELMS,                              )
                                          )
              *Plaintiff*,                )
                                          )
Vs.                                       )    CIVIL  NO.:09CV-0863-KOB
                                          )
                                          )
CITY OF SUMITON, et al.                   )
              *Defendants*.               )

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
### CITY OF SUMITON, BURNETT, AND DAUGHERTY'S
### MOTION TO DISMISS

Comes now, Plaintiff Robyn Helms, by and through undersigned counsel, and hereby files this response to the above Defendants' motion to dismiss.

### Discussion & Application of Law

1.   Defendants' Alleged Grounds for Dismissal

Defendants City of Sumiton, Burnett, and Daugherty submits a motion to dismiss by way of a conclusory statement stating they can't be sued under vicariously liability theory. Defendant's also present a separate assertion of qualified immunity to the First Amendment claim(s), along with a intracorporate conspiracy bar, but does not offer a legal argument nor discuss a single word of the alleged conduct or anything of substance except a few words of a label. For that matter, Defendants do not even allege a threshold requirement they were performing a discretionary duty for purpose of qualified immunity.

1

Additionally, Defendants impermissibly adopt another defendant's separately filed motion by reference as its own defense, without even restating the contents of the other motion. The motion is defective on its face as set forth herein.

(a) <u>Failure to state a vicarious liability claim</u>

The gist of Defendants' motion is they cannot be sued under a vicarious liability theory in causes of action one through four.  Defendants do not challenge the substantive conduct in the complaint allegations raised as a Fourteenth Amendment violation for cruel and unusual punishment, Due Process or Deliberate Indifference violation as Plaintiff claims, but rather, defendants only challenge whether they can be sued under a vicariously liable theory. Thus, the examination is limited to whether they can be sued under this theory. Defendants motion states at paragraph two through five.[1]

> "In <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978) the United States Supreme Court conclusively resolved that Congress never intended to impose vicarious or respondeat superior liability under 42 U.S.C. 1983."

The foregoing sentence is the entire argument presented by Defendants. The conclusory statement is not interposed with their conduct alleged in the complaint nor any comparison with Eleventh Circuit precedent other than to severely misquote the holdings of the Supreme Court in the one case citation. Defendants' must do more than simply apply a label from a formulaic recitation of Rule 12(b).

---

[1] Contrary to Local Rules, Defendants motion contains no page numbers and therefore Plaintiff will reference by paragraph numbers.

Defendants' are grievously mistaken in their attempt to cite the U.S. Supreme Court. It is a well-settled staple of federal practice that when it is alleged that the policy and custom of the municipality or delegated policy-maker has caused, or is the proximate cause of the injury, the municipality can be sued.

> "A municipality may be held liable under § 1983 if the plaintiff shows that a "custom" or "policy" of the municipality was the "moving force" behind the constitutional deprivation." <u>Monell v. Department of Social Services of New York</u>, 436 U.S. 658, 690-94, 98 S.Ct. 2018, 2035-38, 56 L.Ed.2d 611 (1978).

"A single incident of unconstitutional activity may be sufficient to impose liability if the incident was caused by an existing, unconstitutional municipal policy attributable to a municipal policymaker." <u>Ibid</u>. *See also*, <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, at 823-24 (1985). A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. <u>Brown v. City of Fort Lauderdale</u>, 923 F.2d 1474, 1479-80 (11th Cir.1991). *See also*, <u>Owen v. City of Independence</u>, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)(finding municipality liable despite evidence that showed only a single instance of misconduct). Policy and custom can also be established by lack thereof. A local government is said to have an unconstitutional policy when it fails to train its employees, and the failure to train amounts to deliberate indifference to an obvious need for such training, and the failure train will likely result in the employee making a wrong decision. <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989).

Since the U.S. Supreme Court ruling in <u>Pembaur v. City of Cincinnati,</u> 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), this vicarious liability question is settled. Albeit Plaintiff has set forth fact-specific conduct in support of the claims in her well-pleaded complaint for vicarious liability[2], the Supreme Court has also rejected the notion that a plaintiff must meet a heightened pleading

---

[2] *I.e.,* "Prior to and subsequent to the incident complained of herein, the Defendant Chief of Police and City of Sumiton have been made aware of the numerous incidents on the application of force and chemical agent by its officers through complaints by citizens, inmates, direct knowledge of prior incidents and constant video monitoring of the incidents, and direct knowledge of the chemical agent use when ordering/inventorying replacements of chemical agent, but took no affirmative action on discipline of its officers and provided no further training to its officers on the lawful use of force and providing medical treatment. The knowledge and inaction provided a tacit authorization and ratification to the policy and custom of unrestricted and unlawful use of force by means of chemical agent for no legitimate reason which is the proximate cause of Plaintiff's injuries", (*id.* at ¶ 20); "The City of Sumiton, Alabama ……has delegated such authority to the Chief of Police. City of Sumiton is sued in its official capacity and individually under 42 U.S.C. 1983"; "Defendants have repeatedly and unlawfully used chemical agents against persons in their custody with impunity from their supervisors and the City of Sumiton", (*id.* at ¶ 19); "No disciplinary action was taken against defendant in this incident [other incident separate from Helms]. Defendant's conduct ….. another example of the policy and custom of the City of Sumiton Alabama Police Department regarding the unrestricted and unlawful use of chemical agent pepper spray for no legitimate reason with no remedial action being taken against the officers committing the acts, (*id.* at ¶6); The Defendant City of Sumiton Alabama is responsible for the policy, customs and procedures of the Sumiton Police Department and has delegated its responsibilities for police policy, custom and procedure to the Chief of Police of the Sumiton Alabama Police Department. The City of Sumiton was ….. despite numerous past complaints of police misconduct regarding the use of chemical agent. It is the City of Sumiton's inaction and failure to take remedial action that has created the defacto policy and custom of turning a blind eye to the Constitutional violations set forth herein. The City of Sumiton is sued in its official capacity for reasons that its policy and customs and failure to take remedial action are the proximate causes of the injuries sustained by Plaintiff. The City of Sumiton is also sued in its individual capacity for the foregoing actions in this Complaint", (*id.* at ¶ 24); "Defendant Chief T. J. Burnett was at all times relevant herein, the Chief of the Sumiton Alabama Police Department, who was at all times responsible for the implementation of training, setting of policy, custom, procedures and conduct of the officers of the Sumiton Police Department and for the ensuring that all officers of the police department adhere to the laws of the U.S. Constitution and the State of Alabama. Defendant Chief of Police was acting under color of law at all times relevant herein. Chief Burnett is sued individually and in his capacity as the Chief of the City of Sumiton Alabama Police Department for which he has been delegated authority for setting the policy, custom(s), procedure(s) and training of the Sumiton Police Department".

standard to state a claim against a municipality for an unconstitutional custom or policy. Leatherman v. Tarrant County, 507 U.S. 163 (1993).

For purpose of addressing Chief Burnett's vicarious supervisor liability issue (which he never raises any argument other than the identical conclusory statement of Defendant City of Sumiton, a single action by an individual with policymaking authority may constitute official policy for the purposes of finding municipal liability under § 1983. *See e.g.*, Mandel v. Doe, 888 F.2d 783, 791 (11th Cir. 1989). An unconstitutional policy may also exist if an isolated action of a government employee is dictated by a "final policymaker". Bryan County v. Brown, 520 U.S. 397 (1997). Municipal liability will attach if the decision of a final municipal policy maker caused the deprivation of plaintiff's federally protected right. Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002). *See also*, Gearson v. Kemp, 891 F.2d 829, 839–40 (11th Cir. 1990) (involving a claim of supervisory liability against prison warden for his employees' deliberate indifference to inmate's serious medical need); Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985) (involving a claim of supervisory liability against city public safety director for his employees' use of excessive force). The necessary causal connection to vicarious or supervisor liability can be established to a Chief of Police or Sheriff "when a history of abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Cottone v. Jones, 326 F.3d 1352 (quoting

Braddy v. Fla. Dept. of Labor & and Employment, 133 F.3d 797, 802 (11th Cir. 1998); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Ancata v. Prison Health Services, Inc., 769 F.2d 700 (11th Cir. 1985). The causal connection may be established when a supervisor's "'custom or policy ... result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).

Herein Helms, not only was the policy and custom established by Burnett and Sumiton, Burnett is also alleged to have participated and attempted to cover-up the actions of the jailer(s).

The additional problem with the Defendants motion on this vicarious liability issue is that the Defendants raise a one argument fits all as to each of these defendants' which makes no sense. For example, Defendant Daugherty was never sued in capacity of municipal vicarious liability due to policy and custom as he infers in his motion to dismiss and therefore because Daugherty has limited his argument to a vicarious liability issue, he cannot be said to have made any other argument to these causes of action (one through four) for dismissal purposes of failure to state a claim. For purpose of these three Defendant's adopting by reference the argument of Defendant Noles separately filed motion, such argument fails insofar as Noles likewise *never* raised a vicarious liability defense.

Plaintiff need not belabor the point. The argument of these three Defendants that it is not permissable to be sued in a viacrious liability theory is due to be denied for reasons that the motion fails to present any argument other than a conclusory statement and most importantly, the legal theory presented that [municipalities cannot be held vicariously liable] is inherently defective. [3]

(b) adopting & incorporating by reference
    another defendant's separately filed motion

Defendant's motion to dismiss is defective insofar as it is improper to adopt by reference and incorporate as its own defense; another defendant's separately filed motion. In doing so, the above Defendants' are attempting to have the conduct of Defendant Noles substituted as their separate conduct and therefore whatever Noles did and his accompanying legal argument, is what these defendant's are arguing as grounds for dismissal to their conduct. This is a legal impossibility and presents a phalanx of deficiencies and a conundrum trying to reply to. Moreover, incorporating Defendant Noles' argument does not address the factually distinguishable conduct of these Defendants. Further, subsequent to the Defendant Sumiton, Daugherty, and Burnett's instant motion to dismiss (doc. entry

---

[3] If "after the pleadings depositions, answers to interrogatories and admissions on file, together with affidavits" the Defendants desire to argue they *cannot be held liable* under the doctrine of vicarious liability or respondeat superior theory as applied to the facts in this case, this is more akin to a theory for which the proper forum would be a Rule 56(c) motion or either a jury trial if disputed facts remain. Celotex Corp. v. Catreet, 477 U.S. 37, at 322, 91 L.Ed.2d 265, at 273, 106 S.Ct. 2548 (1987). Being held liable under the facts and being able to sue a municipality under this label is a distinction with a difference. It is black letter law the Defendant City of Sumiton and Chief Burnett can be sued in such a capacity.

# 31), Defendant Noles has submitted a reply to Plaintiff's response (doc. entry #37) attempting to correct several deficiencies and omissions in his initial motion to dismiss. Accordingly, insofar as this pleading of Noles was filed *after* Defendant Sumiton's, Burnett and Daugherty's initial motion to dismiss, the subsequent filed document of Noles (addressing the failure to contest the primary First Amendment conduct) cannot be considered applicable to Sumiton, Burnett and Daugherty's motion to dismiss since it had not yet been filed at the time of their motion. This is another example of the never ending problems associated with adopting and incorporating by reference another defendant's motion.

Many other instances of impossibilities arise. For example Noles is not alleged to be the policy and custom maker of the Sumiton Police Department as was the City of Sumiton and Chief Burnet and therefore Noles never presented such an argument to adopt and therefore 'adopting by reference' Noles argument to these defendants conduct is an argument that does not exist. Also, the City of Sumiton is not charged as a coconspirator as is Burnett, Daugherty and Noles and therefore the defense of the City of Sumiton adopting Noles argument is applying an argument to a claim that doesn't exist. Additionally, in certain aspects of the separate filed answer and argument(s), the defendants are stating they did not act in concert with the others actions, and therefore if Sumiton, Burnett and Daugherty are 'adopting by reference' Noles argument, they are at some point accusing themselves of the conduct.

Noles was not alleged to be vicariously liable or in a respondeat superior position and therefore Sumiton's answer and claim that it is not liable under this theory, but yet adopts Noles non-existing argument by reference in support, is a conflicting argument. Under the doctrine of *Judicial Estoppel*, a defendant cannot assert opposite legal theories in the same proceeding, which is precisely what is occurring in the case when adopting another defendant's conduct by reference. These defendants' cannot use Noles' conduct as a defense to their own separate conduct. If they wanted to adopt his legal argument, they should restate it and apply it to the conduct alleged against them in order to permit Plaintiff the ability to address their conduct. The above defendants submitted separate answers to the complaint and should likewise submit a separate motion to dismiss.

   (b) <u>Burnett and Daugherty's qualified immunity to First Amendment claim</u>

       Burnett and Daugherty state they are entitled to qualified immunity on Plaintiff's First Amendment claims. Once again, Defendants' state no legal argument, no theory on why they are entitled to immunity, points to no specific conduct, and never even raises the threshold showing or claim they were acting pursuant to their discretionary duties. Defendants do not assert whether their alleged qualified immunity is due to a failure to state a claim, lack of clearly established law or anything else. Defendant's entire argument or statement is nothing more than one sentence:

"Defendant's Burnett and Daugherty are entitled to qualified immunity on Plaintiff's claims alleged under 42 U.S.C. 1983 for violation of the First Amendment to the United States Constitution"

Quite frankly, the examination of the motion should stop here and Defendants' have not properly presented a qualified immunity argument.[4]

Notwithstanding the fact Plaintiff should not be required to respond to a qualified immunity claim that has not been properly asserted nor can Plaintiff couch a specific response to an argument that does not exist, Plaintiff can only set forth general reasons why the qualified immunity is not available to Defendants.

The threshold requirement in a qualified immunity claim is for a Defendant to assert and show that during the act complained of, if done for a proper purpose, would be within or reasonably related to, the outer perimeter of discretionary duties. To invoke the qualified immunity defense, the officer has the initial burden of proving that he was acting within the scope of his discretionary authority at the time the alleged wrongful act occurred. Stough v. Gallagher, 967 F.2d 1523, 1526 (11th Cir. 1992). "The defendants have to establish this fact to be able to claim qualified immunity." Bennett v. Hendrix, 423 F.3d 1247, at [4] (11th Cir. 2005)

---

[4] Defendant's entire motion stating that we have immunity, we are not conspirators, municipalities can't be held vicariously liable, we adopt the other defendant's conduct as our own, and without any substantive argument in support is nothing more than a poor attempt at a shotgun pleading and brings to mind the late justice Frankfurter's observations in First Iowa Hydro Electric Co Op v. FPC, 328 U.S. 152, at 187 (1946), that "advocates for the State are like managers of election and pugilistic contests, in that they have a propensity for claiming everything". *Frankfurter, J. dissenting.*

Because Defendants Burnett and Daugherty have never invoked such a position much less established one, the qualified immunity fails once again procedurally.

Although the burden in the qualified immunity claim has not shifted to Plaintiff at this point due to the deficiencies noted previously, nevertheless, once the discretionary function is invoked by a defendant, the examination then turns to (1) whether the facts alleged or shown by plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was clearly established.

Plaintiff submits that qualified immunity is not available to Defendants' Burnett and Daugherty under the circumstances herein. The Eleventh Circuit has made it abundantly clear that in a prisoner case, if the constitutional violation shows that the force was used for malicious and sadistic purpose, (which Plaintiff has clearly set forth in the complaint and Defendants do not and cannot dispute in a Rule 12(b) motion), the qualified immunity evaporates. *See* <u>Johnson v Breedon</u>, 280 F.3d 1308 (11th Cir 2002)(cited in <u>Danley</u>, 540 F.3d 1298 (11th Cir. 2009).

> "Equally important, it is clearly established that all infliction of excessive force on a prisoner sadistically and maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause. So, where this type of constitutional violation is established there is no room for qualified immunity."

"It is not just that this constitutional tort involves a subjective element, it is that the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is

clearly established to be a violation of the Constitution by the Supreme Court."
Thus, qualified immunity fails for Defendants Burnett and Daugherty.

Notwithstanding the foregoing and out of an abundance of caution, Plaintiff
will further defend the cognizable First amendment claim.

The Eleventh Circuit has implemented a formula for stating a First
Amendment claim and a Plaintiff only need allege facts or infer that:

> "Plaintiff's speech or act was constitutionally protected, the
> defendant's retaliatory conduct adversely affected the
> protected speech, and there is a casual connection between
> the retaliatory actions and the adverse effect on speech."

Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2009). In defining the 'adverse
effect', the Court applies the rule of an objective test as opposed to subjective
review and therefore "a plaintiff suffers adverse action if the defendant's alleged
retaliatory conduct would likely deter a person of ordinary firmness from the
exercise of their First Amendment rights". Id. at 1243.

Helms has presented two instances of Defendants violating her First
Amendment rights: (1) She exhibited protected speech of requesting medical
assistance and screaming from pain due to an injury and defendant took adverse
action by refusing to allow decontamination which is force in itself by prolonged
infliction of pain, withheld medical attention, threatened her with additional force
by chemical agent, left her to crawl a maze of hallways and corners if she wanted
to decontaminate after seven hours, and (2) She initiated speech in response to

Defendant calling her a bitch and taunting her with insults. Defendant called her a bitch, left and returned and while Plaintiff was lying in her bed, applied a canister of chemical agent malicously and sadistically for no legitimate reason aside from her speech and laughed at Plaintiff screaming and vomiting and attempting to stick her face in the toilet for water. The foregoing is not by any means exhaustive as to the complaint allegations. In short, Plaintiff was tortured with a chemical agent for seven to ten hours as a result of her speech. Under these circumstances, the adverse action is so severe that ordinary persons would be detered from exercising their First Amendment rights. Jail walls do not form a barrier separating prison inmates from the protections of the Constitution." <u>Turner v. Safley</u>, 482 U.S. 78, 85-89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). "Prison officials may not retaliate against an inmate for exercising a constitutionally protected right and a claim that prison officials retaliated for exercising First Amendment right states a valid claim".. <u>Adams</u>, 784 F.2d at 1082. *See also*, <u>Bridges</u>, 757 F.2d at 1155 (11th Cir 1985). The tribunal in <u>Bennett v. Hendrix</u>, 423 F.3d 1247 (11th Cir. 2009) likewise discussed that custodial persons maintain First Amendment rights.[5]

---

[5]  We have held that "[t]o state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right. . . . The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Farrow v. West,* 320 F.3d 1235, 1248 (11th Cir.2003) (alterations omitted) (quoting *Thomas v. Evans,* 880 F.2d 1235, 1242 (11th Cir.1989)).

*Clearly Established Law*

For purpose of showing clearly established law, Plaintiff again reiterates the rationale in Johnson v Breedon, *supra*, whereas the subjective element required to establish it is so extreme (force employed for sadistic and malicious purpose for no legitimate penological reason), that every conceivable set of circumstances in which this violation occurs is clearly established by the Supreme Court.

Additionally, "Courts have held since at least 1988 that is settled law the government may not retaliate against citizens for exercise of First Amendment rights", Bennett, *supra* at 1257 (citing Ga Ass'n of Educators, 856 F.2d at 145), but even if it were not and for purpose of addressing Defendant's general excerpt argument of no clearly established law, "fact-specific precedents are not always needed to overcome qualified immunity especially when conduct lies so obviously at the very core of what the Constitutional Amendment prohibits that the unlawfulness of the conduct is readily apparent, notwithstanding the lack of fact-specific case law." Lee, 284 F.3d at 1199 (11th Cir. 1994). "Preexisting case law, tied to the precise facts, is not in every situation essential." Marsh, 268 F.3d at 1031 n.9. The gist of a First Amendment retaliation claim is that a prisoner is punished for exercising rights of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). An officer's conduct contrary to clearly established law can be found when the evidence infers that any reasonable officer would know what he

did violates the constitution and when he acts outside the scope of good faith, he acts outside the scope of qualified immunity.

A government official can be put on notice that his actions will violate a constitutional or statutory right by one or more of three sources: (1) a specific constitutional or statutory provision; (2) a legal principle announced by a decision from a court with jurisdiction over the place where the violation of rights was committed; and (3) a case with similar facts that has already been decided by one of those courts. Danley v. Allen, 540 F.3d 1298 (11th Cir. 2009)(citing Goebert, 510 F.3d at 1330)(which coincidentally contains very similar facts as Helms. In some cases, the words of the pertinent federal statute or federal constitutional provision will be specific enough to clearly establish the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law. For example, the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful. Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir.1997). When looking at case law, some broad statements of principle are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts. See Marsh, 268 F.3d at 1031-32 n.9. For example, if some authoritative judicial decision decides a case by determining that "X Conduct" is unconstitutional without tying that determination to a particularized set of facts, the decision on "X Conduct" can be read as having

clearly established a constitutional principle: put differently, the precise facts surrounding "X Conduct" is immaterial to a violation.[6] The Eleventh Circuit also gave an example in Skrtich v. Thornton, 280 F.3d 1295 (11th Cir 2002). "The question for qualified immunity analysis posed about whether, at the time of the incident, it was clearly established that it is unlawful to inflict a beating upon a prisoner in custody when he is incapacitated and no longer able to pose a threat to the guards, the circumstances facing the prison guards regarding unlawful infliction of force on nonresisting prisoners, specifically a inmate who had been restrained by the guards and no longer posed a threat, were enough that no reasonable, similarly situated official could believe that the factual differences between the line of precedent and the circumstances here might make a difference to the conclusion about whether the official's conduct was lawful and we find no merit to the defendant officers' arguments claiming entitlement to qualified immunity." Ibid.

Plaintiff's First Amendment rights are `fundamental,' that is, rights that are `implicit in the concept of ordered liberty.'" McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)). Substantive due process rights are created by the Constitution, and "no amount of process can justify [their] infringement". McKinney 20 F.3d at 1557.

---

[6] As a rule, "we generally accept that the smaller the number of material facts in an opinion, the wider will be the legal principle it decides". Vinyard Wilson, 311 F.3d 1340 (11th Cir. 2002).

The Supreme Court decision in <u>Hope v. Pelzer</u> likewise instructs that "[a]lthough earlier cases involving `fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." <u>Id</u>. 122 S. Ct. at 2516. Instead, in the absence of fact-specific case law, the plaintiff may overcome the qualified immunity defense when the preexisting general constitutional rule applies "with obvious clarity to the specific conduct in question," and it must have been "obvious" to a reasonable police officer that the pertinent conduct given the circumstances must have been unconstitutional at the time. <u>Id</u>. (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997). In elaborating particularly about the second type of notice or warning (<i>i.e.</i>, the second kind of "obvious clarity" case), the Court stated:

> In some circumstances, as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary. But general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful," <u>Anderson</u>, <u>supra</u>, at 640, 107 S. Ct. 3034. Id<u>.</u>, <u>Lanier</u> at 270-271, 117 S.Ct. 1219 (citation omitted).

<u>Ibid</u>. (alteration in original) (emphasis added). First Amendment claims are unique and the test for asserting a First Amendment claim is a Plaintiff must establish that the retaliatory action would deter a person of ordinary fairness from exercising his or her First Amendment Rights, not any specific case involving exact conduct.

Notwithstanding the above discussion, there is an abundance of preexisting case law which provided more than fair warning to these three Defendants that their conduct grievously violated the Constitution. *See also*, <u>Hudson v. McMillan</u>, 503 U.S. 1, 112 S.Ct. 995 (1992).

In view of the foregoing and in conclusion to this issue, Defendants Burnett and Daugherty's qualified immunity claim is inherently defective for a host of reasons and is due to be summarily denied on its face as a result of the motions procedural defects of failing to properly raise the immunity claim notwithstanding lack of legal merit.

(c) <u>Conspiracy claims and intracorporate defense</u>

Defendants Burnett and Daugherty raise the claim of an intracorporate defense and once again state nothing more than the above words in presenting the claim of this defense. No facts, no argument and nothing but a conclusory label.

Regardless of the Defendants proclivity for failing to properly assert a defense other than to recite Rule 12(b) Fed.R.Civ.P., the argument must fail for several additional reasons. Even if Plaintiff were to assume that Defendants non asserted virtual argument is that because they are both of the same city police department, they are considered as one corporate agency and thus the requisite two or more responsible persons cannot be met, this is of no consequence to Plaintiff's claim. In the complaint, Burnett and Daugherty were sued as part of a conspiracy in both their individual and official capacity. In part, Plaintiff stated:

> "The conduct of Defendant's Noles and Daugherty, jointly undertaken with each other in their <u>official capacity</u> and with each other and <u>others in their individual capacity</u>, of conspiring, confederating, and jointly undertaking the overt acts of use of excessive force, intentional and malicious infliction of pain and suffering, deliberate indifference to medical needs, and specifically referring to Plaintiff as a woman in doing so, constitutes a violation of Plaintiff's rights under 42 U.S.C. §§ 1983 and 1985."

Id. at ¶ 36. The Supreme Court and the Eleventh Circuit has established that officers acting under color of law can conspire with an individual and is not limited to those in official capacity. Either one of the officers acting in their official capacity in concert with the other acting in his individually capacity, or both of them acting together in their individual capacity (just as Plaintiff has alleged in the complaint), meets the burden of two or more persons. It is a well settled staple of federal practice that a law enforcement officer can conspire with an individual for conspiracy purposes under 42 U.S.C. §§1983, 1985 of and thus a valid claim exists. *See* <u>Adickes v. S.H. Kress</u>, 398 U.S. 144, 150-52 (1970); <u>Monroe v. Pape</u>, 365 U. S. 167 (1961)(same); <u>Canton v. Harriss</u>, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203. Additionally, a laundry list of cases have been sustained whereas several members of a law enforcement agency where held liable under a 1983 and 1985 conspiracy. Just to name a few, <u>Bennet v. Hendrix</u>, 423 F.3d 1247 (11th Cir 2005)(Sheriff and three fellow Sheriff's Department officers conspired under 1983 against Plaintiff and his family. Court denied summary judgment on the plaintiffs'

claim of retaliation in violation of the First Amendment, their § 1983 conspiracy claim, and state law claims); <u>Finch v. City of Vernon</u>, 877 F.2d 1497 (11th Cir. 1989)(action against City, Mayor and City council sustained as separate Defendants for trial). Liability does not arise solely out of Noles, Daugherty, or Burnett's own direct conduct. The contention that a conspiracy existed which deprived the petitioner of rights guaranteed by federal law renders each member of the conspiracy vicariously liable for the effects of that deprivation. Of course, for a claim under § 1983, a conspiracy as such is not an indispensable element as it is under § 1985. But it may be charged as the legal mechanism through which to impose liability on each and all of the Defendants without regard to the person doing the particular act. Conspiracy is asserted in that situation on more or less traditional principles of agency, partnership, joint venture, and like.[7] Liability does not arise solely out of his own direct conduct, but his membership in the conspiracy. A valid conspiracy can exist from a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful; <u>Monroe v. Pape</u>, <u>365 U. S. 167</u> (1961); *see United States v*. <u>*Classic,*</u> 313 U. S. 299, 313 U. S. 326 (1941); <u>Screws v. United States</u>, <u>325 U. S. 91</u>.

---

[7] It is noteworthy to mention that Defendant City of Sumiton, officer Burnett and Daugherty recently filed a separate motion to dismiss, and argues on the one hand that it's acts and the officers are one and the same for purpose of conspiracy negation of two or more persons but on the other hand states "it is not liable for the actions of the other officers".

Williams v. United States, 341 U. S. 97, 341 U. S. 99-100 (1951). Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under a conspiracy theory which renders him vicariously liable for all the conduct of his co-conspirators. Richardson v Fleming, 651 F.2d 366, at 730 (5th Cir. 1981), Sparks v Duvall County Ranch, Inc. 604 F.2d 976 (5th Cir 1979)(Conspiring to violate another person's constitutional rights violates section 1983) *en banc*, aff'd sub nom., Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.ed. 2d 185 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90.. Dennis v. Sparks, 449 U.S. 24, 27 101 S.Ct. 183, 186 (1980); Strength v. Hubert, 854 F.2d 421, 425 (11th Cir.1988). To establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that the defendants "reached an understanding to violate [his] rights." Strength, 854 F.2d at 425 (quotation omitted). The plaintiff does not have to produce a "smoking gun" to establish the "understanding" or "willful participation" required to show a conspiracy, Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir.1990).

Herein Helms, Defendants do not challenge whether Plaintiff has stated a conspiracy, but rather, whether they can be charged as conspirators because they work for the same agency. Importantly, the action complained of herein necessarily states a criminal civil rights action under Title 18 U.S.Code. Separately and in addition, Plaintiff alleged in the complaint at p. 8-9, ¶20, that Defendant Burnett

was conspiring with witnesses: "Subsequent to the filing of the instant cause of action, Defendant Burnett has made contact with several witnesses to the incident and attempted to dissuade the witnesses from testifying against him in the instant matter and based upon information and belief, has further attempted to obstruct their prospective testimony." As such, the decision in <u>McAndrew v. Lockheed Martin Corp.</u>, 206 F.3d 1031 at 1038 (11th Cir. 2000) instructs no intracorporate defense is available. "This case raises the discrete question of the applicability of the intracorporate conspiracy doctrine to claims arising under 42 U.S.C. 1985 and alleging a conspiracy among corporate officers and the corporation itself. We hold that just as the intracorporate conspiracy doctrine cannot shield a criminal conspiracy from prosecution under the federal criminal code, the doctrine cannot shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability arising under 42 U.S.C. 1985." As noted previously, the allegation the conduct is likewise criminal is further emboldened by defendant's own words in his answer at p. 11, ¶ (b)): "Unless defendant is afforded the same procedural safeguards as are criminal defendants, including, but not limited, the <u>right to avoid self-incrimination</u>, the right to forego production and <u>disclosure of any incriminating documents</u>……" Additionally, the after the fact conspiracy attempt to cover up the acts is precisely the conduct mentioned in <u>McAndrew</u> when the corporate officers attempted to obstruct testimony and the court cited the related criminal statute under 18 USC 1512(b).

> Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to- influence, delay, or prevent the testimony of any person in an official proceeding; .... shall be fined under this title or imprisoned not more than ten years, or….

The conduct involving the pepper spray, i.e., the excessive force and deliberate indifference, occurred for no legitimate reason and necessarily infers a criminal civil rights violation and the actions of conspiring with witnesses to corruptly persuade their testimony by improper means is also a criminal violation under 18 U.S.C. 1512(b). In finality, the Court held that "we now adopt this exception and hold that it is possible for a corporation to conspire with its own officers, agents and employees".

The former Fifth Circuit recognized this exception to the [single corporate entity] fiction in two cases one civil and the other a criminal. *See* Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir.1998), cert. denied, __ U.S. __, 119 S.Ct. 1457, 143 L.Ed.2d 543 (1999) (applying the intracorporate conspiracy doctrine to plaintiffs' 1985(3) claims alleging defendant supervisors conspired to deprive plaintiffs of their First Amendment and equal protection rights *but* finding the claims fell within an exception to the doctrine which arises when corporate employees act for their own personal purposes). In Dussouy v. Gulf Coast Investment Corp, 660 F.2d 594 (5th Cir.1981) the Court stated: "a corporation can be convicted of criminal charges of conspiracy based solely on conspiracy with its

own employees." Id. at 603.[8]    In sumation, Defendants acts of conspiring with each other in their individual and official capacity state a valid conspiracy claim (*accord* Adickes), and due to Defendants actions necessarily inferring a criminal violation during the events while Plaintiff was in custody and those actions of obstruction and attempting to improperly dissuade witness from testifying, the intracorprate defense theory is without any force and effect.

(d) Official Capacity claims against Brunette, Daugherty

Defendants claims because the City of Sumiton is named as a defendant in this action as are Defendants Burnett and Daugherty likewise, naming them along with the city would be redundant and superfluous in their official capacity.

This is incorrect and not only does the Code of Alabama require the officers to be named along with the City of Sumiton for purpose of State law claims, a library of case precedents exists in the Eleventh Circuit regarding the federal constitutional claims resolving that it is proper to name the agency or municipality along with the individual officers as named defendants. *See* Farred v Hicks, 915 F.2d 1530 (11th Cir. 1990) (proper to name officer who is plocy-maker and municipality organization itself). The tribunal stated precisely what Defendant Noles alleged in his motion to dismiss that when "a section 1983 plaintiff sues government employees (such as police officers) in their official capacities, the suit

---

[8] All decisions of the Fifth Circuit rendered prior to October 1, 1981, are Circuit precedent for the Eleventh Circuit. Bonner v. City of Prichard, 651 F.2d 1206, 1207 (11th Cir. 1981).

is in actuality against the governmental entity that the individuals represent". However, the Court never opined that there must only be one named individual such as the municipality simply because each of the officers are acting as agents of the municipality. In fact, the panel goes on to opine that it is proper to name the officers and the police department head and remanded the case to allow the action to proceed with all officers in their official capacity. *See also*, Bennet v. Hendrix, 423 F.3d 1247, 1249 (11th Cir. 2005)(action proper against 3 officers same agency). Herein Helms, both the City of Sumiton and Chief Burnett each deny they are the policy maker or responsible for training for the Police Department and therefore this presents another reason to name each of them both as Defendants. *See* City of Sumiton answer to complaint at ¶ 6 (acknowledging complaint allegations as municiplaity but denying allegations in complaint that it is the policy-maker). *See* Burnett's answer to complaint (doc. entry# 33) at ¶ 5 (acknowledging complaint allegations as Chief of Police but denying allegations in complaint as policy-maker or person responsible for training of officers).

Plaintiff alleged in the complaint that both of the Defendant's had equally culpable conduct in the poliy and custom, failure to train, and Burnette participated in the conspiracy.

Actions against the officer and the city for which they are employed continue to be sustained by the courts in their official capacity. Defendant Noles citations of Brandon v. Holt, 469 U.S. 464 (1985), was nothing more than the case

25

question of who is responsible for paying the damages. It had absolutely nothing to do with officers being named in their official capacity while simultaneously naming the City itself as a defendant. Likewise, in <u>Gilmere v. City of Atlanta</u>, 774 F.2d 1495 (11th Cir 1985), *cert denied*, 476 U.S. 1115, 106 S.Ct. 1970 (1986), the case went to trial naming several officers and the City of Atlanta in their official capacities. The appellate tribunal set forth the different standards applicable to the City in its official capacity and also the officers acting in their official capacity and ultimately held the City not liable but did find the officers liable in their official capacity. <u>Finch v. City of Vernon</u>, 877 F.2d 1497 (11th Cir. 1989)(action against City, Mayor and City council sustained as separate Defendants for trial). Likewise herein Helms, objective facts and standards of proof differentiate for the officials named in their official capacity. The City of Sumiton is named as a defendant on numerous grounds. For instance, Plaintiff alleges the 'policy and custom' of the City and was a factor in the injury along with turning a blind eye to repeated constitutional violations after the City of Sumiton delegated its official policy making to the Chief of Police (T. J. Burnett). As the Chief of Police and subsequent policy-maker, his actions and inactions as alleged in the Complaint were the cause of injury. Each is alleged to have committed different elements. Thus, there were two official policy makers. As noted in their answers, each of them state that neither of them are the policy-maker nor responsible for training of

the officers. This is nothing but an attempt to avoid liability as the policy-maker while simultaneously committing the constitutional violations.

Importantly, with respect to the State law claims, under Alabama Code at 11-47-191, when instituting "a civil action against the municipality for damages suffered by him, A Plaintiff <u>shall also join such other person or persons so liable as defendant</u> or defendants of the civil action". Further, "no person shall be sued jointly with the city or town who would not be liable separately, irrespective of this provision".

Furthermore, for purpose of conspiracy, the distinct acts of several officers acting in their official capacity are not considered one and the same or redundant just as they are not insulated as one and the same for purpose of intracorporate conspiracy doctrine. The City of Sumiton is not alleged to be a participant in the conspiracy whereas Noles, Daugherty, and Burnett are. *See,* <u>Bennetv. Hendrix</u>, 423 F.3d 1247 (11th Cir. 2005)(4 separate officers sustained in their official capacity). Herein Helms, it is possible to find the City not liable and the officers liable and vice versa and therefore naming them separately is appropriate. Moreover, insofar as Sumiton and Chief Burnett state that neither of them are the policy-maker, Defendants cannot simultaneously infer for purpose of naming defendants as a proper party that because the City of Sumiton is a named defendant it is therefore the policy–maker and Chief Burnett should be dismissed as redundant, but yet argue and infer on the other hand (either now or upon trial), it [City of Sumiton] is

not responsible for making policy and custom for purpose of establishing liability as such.[9] Additionally, official capacity conspiracy claims requires a different analysis than the First and Fourteenth Amendment claims.

The City of Sumiton and the numerous defendants have individual conduct specific actions in their official capacity and therefore the one size fits all for official capacity claims is improper. Moreover, when it comes to damage award(s), the jury could hold that tortfeasors are jointly and severally liable[10] for acts of concurrent causation or the parties could otherwise stipulate to apportion damages for acts of successive causation by each defendant in his official capacity, which was the case that arose in Finch v. City of Vernon, 877 F.2d 1497. Plaintiff's action against the City of Sumiton, Chief Burnett, and Daugherty in their official capacity is proper.

(e) Plaintiff's State Law Claims

Defendants assert the outrage claim (assault and battery) against Burnett and Daugherty fails to state a claim and that the City of Sumiton cannot be held liable

---

[9] The interest of Defendants Sumiton, Burnett and Daugherty appear to frequently conflict with each other and the Court may wish to order Defendant's obtain separate counsel or execute an appropriate conflict waiver.

[10] Regardless of whether Daugherty took part in the initial chemical attack, he was an active participant in the continuing torture, withholding medical treatment, and failure to take remedial action and inherits the liability for all actions notwithstanding the conspiracy. See Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]"); see also Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985)

for torts of their employees. Further, Plaintiff's claim for intentional infliction of emotional distress fails to state a claim under Alabama law. Once again, Defendants do not cite a single word of their conduct nor a single case citation in regards to their claim and simple make a conclusory one sentence statement.

*City of Sumiton*

With regards to the state law claims of intentional infliction of emotional distress, assault and battery [outrage], Defendant City of Sumiton states that under Code of Alabama 11-47-190 (1975), municipalities cannot be liable for intentional torts of their officers or employees. Defendant Sumiton does not challenge whether the facts make out a claim, but rather, limits the argument, (or lack thereof) to whether the City can be sued under state law. It is true that "no city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation". However, Defendant Sumiton omits the remainder of the code:

> "unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness …….. after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured." (emphasis added).

Plaintiff has set forth a quantum of facts whereas the City of Sumiton had knowledge of the acts, condoned it, actually participated in it, and turned a blind eye to repeated instances of the constitutional violation and failed to take remedial action. The Alabama Supreme Court nullified the City of Sumiton's assertion in a lengthy discussion in the matter of Swan v. City of Hueytown, 920 So. 2d 1075, 1082 (Ala. 2005). *See also*, (City of Bayou La Batre v. Robinson, 785 So.2d 1128 (Ala. 2000)(discussing the non-application of Alabama Code 11-47-190 to municipality). Accordingly, Defendant Sumiton fails in its conclusion that it cannot be sued for actions of its employees.

*Burnett and Daugherty*

Defendants fail to assert which capacity any of the foregoing state law defenses are made, either official or individual, nor points to any conduct in the complaint which it relies upon. Plaintiff must merely guess for purpose of a responsive argument.[11] As such, Defendants statement that the complaint does not state a maintainable claim under Alabama law must fail. Notwithstanding the deficiency, with regard to Burnett and Daugherty's failure to state a claim for assault and battery and outrage, Plaintiff has set forth a very clear and concise course of sadistic conduct that is so egregious as to amount to willful or malicious conduct and they were knowingly acting in and engaging in bad faith. Therefore

---

[11] "Failure to state a maintainable claim". What does this mean? Does he mean to argue the conduct doesn't state a claim, he has discretionary immunity, or what? Plaintiff is left to guess as to the intentions of the Defendants assertion which is rampant practice throughout the motion.

any discretionary-function immunity to a municipal police officer does not apply. *See* <u>Norris v. City of Montgomery</u>, 821 So.2d 149, 153 (Ala. 2001) (internal marks and citation omitted) (emphasis in original); <u>Ex parte City of Gadsden</u>, 781 So.2d 144, 153 (Ala. 2000); <u>Couch v. City of Sheffield</u>, 708 So.2d 144, 153 (Ala. 1998). "Acts taken in bad faith, or willful or malicious conduct, will not be considered discretionary in nature." <u>Ex parte City of Montgomery</u>, 758 So. 2d 565, 569 (Ala. 1999)(citing <u>Couch</u>); <u>Wright v. Wynn</u>, 682 So. 2d 1 (Ala. 1996); <u>Barnes v. Dale</u>, 530 So.2d 770 (Ala. 1988); <u>DeStafney v. University of Alabama</u>, 413 So.2d 391 (Ala. 1981)).

Burnett and Daugherty's vague assertion of "failure to state a maintainable claim" is due to be denied.

## 2.    <u>Conclusion</u>

In view of all the foregoing, Defendants Sumiton, Burnett, and Daugherty's motion to dismiss is due to be denied for a host of reasons. Due to the defective manner in which the motion to dismiss is presented as Plaintiff identifies herein, Plaintiff moves that the Court summarily deny the motion of these defendants on its face prior to reaching the merits.

Respectfully submitted this 6th day of July, 2009.

/s/ J. CHARLES WILSON
J. Charles Wilson
Attorney for Plaintiff
2151 Government Street
P.O. Box 6375
Mobile, AL 36660
FED. I.D.# WILSJ1975
AL Bar No. ASB1975-N66J
Tel: (251) 471-8005
Fax: (251) 478-3396
T. Free 866-488-2151
Email: JCW@wilsonlaw.net

## CERTIFICATE REGARDING SERVICE

I hereby certify that it is my belief and understanding that counsel for Defendant's, are participant(s) in the Court's CM/ECF program and that separate service of the foregoing document is not required beyond the Notification of Electronic Filing to be forwarded to Defendant's counsel on July 6th, 2009 upon the filing of the foregoing document.


/s/ J. CHARLES WILSON
J. Charles Wilson
Attorney for Plaintiff