FILED
2009 Jul-16 PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# BIRMINGHAM DIVISION

| | |
|---|---|
| ROBYN HELMS, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| Vs. | ) CIVIL NO.: 09CV-0863-KOB |
| | ) |
| | ) |
| CITY OF SUMITON, et al. | ) |
| | ) |
| *Defendants*. | ) |

### PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT NOLES' SUPPLEMENTAL REPLY MOTION TO DISMISS

Comes now, Plaintiff Robyn Helms, by and through undersigned counsel, and files this response to Defendant Noles' supplemental reply (doc entry # 38) to Plaintiff's response (doc. entry # 35) to Noles' initial motion to dismiss (doc. #24).

### Discussion & Application of Law

1. <u>Preliminary Statement</u>

Defendant Noles supplements his argument on qualified immunity and the state law claims for the tort of outrage. As set forth herein, Noles' argument is further defective and his alleged "facts of the federal courts in this State" regarding the state law claims are simply incorrect.

2. <u>Discretionary Duty for Qualified Immunity</u>

Noles' responds to Plaintiff's challenge as to whether his actions were within his discretionary duties and argues that Plaintiff misapprehends the concept

1

of discretionary authority.[1] Noles misunderstands that Plaintiff is asserting that since Noles' duties were merely that of a communications dispatcher, whether his actions of applying chemical spray to a prisoner was within the performance of his duties and needs further examination.

2.   First Amendment Claims

Noles argued that Plaintiff's claims[2] did not rise to the level of a First Amendment violation and Plaintiff had cited no precedent in support and none exists. Further, that "there would be no end to Fourth Amendment or Eighth Amendment claims if speech retaliation rises to the First Amendment level". Not only is it beyond the pale of reason to state "no precedent exists", but moreover, Noles severely errors and completely misunderstands First Amendment rights when he attempts to support his motion with comparative examples of speech from civil service employees involving their employer. Noles states that "a public employees right to freedom of speech is not absolute" along with supplemental argument involving whether a public service employee can make comments contrary to his employers interest.

---

[1] Plaintiff assumes that the discretionary authority analysis was asserted only on the First Amendment qualified immunity claim. A completely different standard would apply to the state law claims insofar as "acts taken in bad faith, or willful or malicious conduct, will not be considered discretionary in nature." Ex parte City of Montgomery, 758 So. 2d 565, 569 (Ala. 1999)(citing Couch v. City of Sheffield, 708 So.2d 144, 153 (Ala. 1998).

[2] Noles initially asserted his argument to the initial chemical attack and argued the law was not clearly established and completely ignored the secondary incident underlying the First Amendment claim. In his supplemental pleading, Noles shifts his argument and limits it solely to the second incident and completely omits the initial incident.

This is precisely the erroneous argument the Eleventh Circuit addressed in <u>Bennet v. Hendrix</u>, 423 F.3d 1247 (11th Cir. 2009):

> "The defendants' reliance on retaliation cases in the public employment context is misplaced, because different interests are at stake there. In the employment context, the required adverse action in a retaliation claim is an "adverse employment action." *See Stavropoulos v. Firestone,* 361 F.3d 610, 616 (11th Cir.2004), *cert. denied,* \_\_\_ U.S. \_\_\_, 125 S.Ct. 1850, 161 L.Ed.2d 727 (2005). Plainly, private citizens cannot suffer adverse employment actions at the hands of public officials who are not their employers."

"Instances of a public employee's speech pursuant to their official duties, rather than as a private citizen" (as herein Helms), is a huge distinction with a difference. *See also*, <u>Suarez Corp</u>*.,* 202 F.2d at 686-87 (distinguishing between public employee and private citizen plaintiffs). In <u>Bennett</u>, the Court likewise discussed that custodial persons maintain First Amendment rights.[3] Accordingly, Defendant Noles' attempt to apply an argument of a civil service employee has no relevancy or merit whatsoever to Plaintiff's claims and therefore does not warrant a further response on such a scenario. Not only does defendant attempt to apply a non-applicable employment law, Noles has likewise turned away from established precedent on First Amendment prison cases which is not surprising as he cannot surmount clearly established law.

The Supreme Court and the Eleventh Circuit has stated time and time again that "prison officials may not retaliate against an inmate for exercising a

---

[3] *See id.* at n.6.

constitutionally protected right and a claim that prison officials retaliated for exercising First Amendment right states a valid claim". Adams , 784 F.2d at 1082. *See also*, Bridges, 757 F.2d at 1155 (11th Cir 1985).  *See also*, Farrow v. West, 320 F.3d 1235, 1248 (11th Cir.2003). We have held that "[t]o state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right. . . . The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." (alterations omitted) (quoting Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir.1989). "Jail walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 85-89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

The Eleventh Circuit has implemented a formula for stating a First Amendment claim and a Plaintiff only need allege facts or infer that:

> "Plaintiff's speech or act was constitutionally protected, the defendant's retaliatory conduct adversely affected the protected speech, and there is a casual connection between the retaliatory actions and the adverse effect on speech."

Bennett, *supra*. In defining the 'adverse effect', the Court applies the rule of an objective "ordinary firmness test" as opposed to subjective review and therefore "a plaintiff suffers adverse action if the defendant's alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of their First Amendment rights. To state a retaliation claim does not necessitate that a private

4

citizen plaintiff plead more than that the defendant's retaliatory acts are such as would chill a person of ordinary firmness". Id. at 1243.

Noles limits his argument to a very small portion of his conduct of the second incident and goes on to create an example stating:

> "Every Fourth Amendment excessive force claim would constitute a First Amendment violation claim premised upon the argument that, when the officer failed to cease the administration of force in response to the request by the citizen to do so, a First Amendment retaliation claim would be stated." (Brief at p. 5).

As a threshold matter, this was not a citation from any precedent and is merely a hypothetical from Noles. In any event, an excessive force claim of a prisoner is not a Fourth Amendment claim. Fourth Amendment incidents occur during arrest. Cruel and unusual punishment claims under the Fourteenth and Eighth Amendment are applicable to pretrial detainees and sentenced prisoners respectively. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). Further, Noles example is defective insofar as this example he created necessarily infers that the force was ongoing prior to the '*request to cease force by a citizen*' and therefore the force was not initially employed as result of the above speech to begin with. In the instant case, Helms was retaliated against and force applied solely due to her speech. The incident of withholding medical attention and continuing the torture was part of the 'adverse effect' from the initial incident that

5

began as a result of speech.[4] This selective examination of one small part of the conduct is not something Noles can frame a valid argument to.[5] Plaintiff stated in her initial reply brief that the chain of events alleged in the complaint were a continuing course of conduct that has to be examined in totality as the Eleventh Circuit had discussed when deciding Danley. "Plaintiff is entitled to have all events construed collectively" and "should not be analyzed separately". "The actions are interrelated parts of a single course of conduct, not separate events". Id. at 1310. (citing Skrtich v. Thornton, 280 F.3d 1295 at 1302 (11th Cir.).

Under Noles theory, there would never be a First Amendment prisoner claim under any circumstances if either the retaliation or adverse action resulting from protected speech was the use of force. Noles cannot point to any sustainable theory or precedent that stands for his proposition that if force was used to retaliate against protected speech, the Plaintiff must bring the claim under the Fourth Amendment because force is excluded from consideration for purpose of analyzing retaliation or adverse action under First Amendment claims. This is precisely what Noles is asking this Court to apply. Noles' theory effectively eviscerates the First Amendment from the Constitution and officers would be free to punish and

---

[4] *See* Plaintiff's response (doc. entry # 35 at p.6), "this distinct act occurring hours later into the event which is distinguishable, although a continuation of, the initial use of force in the First Amendment claim."

[5] Regarding the alleged conduct, Noles states "the analysis applicable here … the alleged speech by plaintiff - request for medical attention", and "it was only that". Noles declaration is patently false and a deliberate subterfuge away from the voluminous conduct as set forth in the complaint.

6

retaliate by way of force against citizens for the sole reason of their speech. The Supreme Court answers Noles' theory and squarely on point regarding First Amendment retaliation by police.

> "The freedom of individuals to <u>verbally oppose or challenge police action</u> without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." <u>City of Houston v. Hill,</u> 482 U.S. 451, 462-63, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398 (1987).

Plaintiff need not repetitively plead her citations and argument in this second response, but a plethora of settled case law exists regarding First Amendment prison cases and those wherein officers used force and First Amendment claims were sustained.[6] Plaintiff has set forth many of those citations in her responsive briefs to all the defendants motion(s) to dismiss). It is abundantly clear that "Courts have held since at least 1988 that is settled law the government may not retaliate against citizens for exercise of First Amendment rights". <u>Bennett</u>, at 1257 (citing <u>Ga Ass'n of Educators,</u> 856 F.2d at 145). "Prison officials retaliating for inmates exercising First Amendment right states a valid claim". (citation omitted). The Eleventh Circuit has made it emphatically clear that "qualified immunity is not available as a defense to beating a restrained prisoner" or in this case, attacking a restrained female with a chemical agent while lying in her bed. <u>Skrtich</u> at 1301.

---

[6] *See also*, <u>Keenan</u>*,* 290 F.3d at 259 (plaintiff stated a First Amendment retaliation claim that would chill a person of ordinary firmness with allegations that officers stopped his car and detained him for an unreasonable time, allegedly with their guns drawn during part of the traffic stop).

7

Noles also argues no case law exists exactly as the conduct alleged herein and therefore the law was not clearly established. (Br. at p. 10). This is not the correct standard on a First Amendment claim. A Plaintiff only need show that at the time of the defendants' alleged actions the law was clearly established that "retaliation against private citizens for exercising their First Amendment rights violates the Constitution". As such,

> "This Court and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights. *See Cate,* 707 F.2d at 1186 (punishment for exercise of First Amendment rights violates First Amendment); *see also City of Houston v. Hill,* 482 U.S. 451, 462-63, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *see also Leslie v. Ingram,* 786 F.2d 1533, 1537 (11th Cir.1986) ("An intentional and wrongful retaliation for the assertion of a constitutionally protected right is a substantive civil rights violation which may be prosecuted in a federal court pursuant to 42 U.S.C. § 1983 . . . ."), *abrogated on other grounds by Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech and no exact conduct specific precedent is required". Farrow, 320 F.3d 1235, 1248 (11th Cir. 2003). Bennett, *supra*.

Perhaps there may not be an identical case (and none is required) that is so egregious whereas a citizen was tortured with a chemical agent for seven hours for telling someone they were fat. Plaintiff's First Amendment rights are `fundamental,' that is, rights that are `implicit in the concept of ordered liberty.'" McKinney v. Pate, 20 F.3d at 1556 (11th Cir. 1994) (en banc).

Noles also need not forget that, "it is clearly established that all infliction of excessive force on a prisoner sadistically and maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause. So, where this type of constitutional violation is established there is no room for qualified immunity." <u>Johnson v Breedon</u>, 280 F.3d 1308 (11th Cir 2002)(cited in <u>Danley</u>, 540 F.3d 1298 (11th Cir. 2009). Even if there were no established precedent, (albeit there is an abundance), "fact-specific precedents are not always needed to overcome qualified immunity especially when conduct lies so obviously at the very core of what the Constitutional Amendment prohibits that the unlawfulness of the conduct is readily apparent, notwithstanding the lack of fact-specific case law". <u>Lee</u>, 284 F.3d at 1199 (11th Cir. 1994).

3.   <u>Conspiracy claims and intracorporate defense</u>

Noles argues that Plaintiff is attempting to evade the bar of intracorporate defense theory for purpose of conspiracy and therein describes Plaintiff's argument as "charitable, unique and a remarkable contention and Plaintiff cites no authority whatsoever". [7] Further, "Plaintiff wholly misapprehends the concept of capacity". (Noles brief at p. 11(D).

In borrowing Defendant's words, what is 'remarkable' are the statements Noles makes when he ignores the cache of precedent set forth in Plaintiff's brief.

---

[7] Plaintiff had submitted that the officer acting in his official capacity conspired with another officer/person in their individual capacity and criminal conduct does not insulate officers from conspiracy claims regardless of whether they belong to the same police department.

9

Noles is the one who 'woefully misunderstands' the concept of a conspiracy allegation. It is a well settled staple of federal practice that a law enforcement officer can conspire with an individual for conspiracy purposes under 42 U.S.C. §§1983, 1985 and thus a valid claim exists. *See* Adickes v. S.H. Kress, 398 U.S. 144, 150-52 (1970); Monroe v. Pape, 365 U. S. 167 (1961)(same); Canton v. Harriss, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203. Additionally, laundry list of cases have been sustained whereas several members of the same law enforcement agency were held liable under a 1983 and 1985 conspiracy. Just to name a few, Bennet v. Hendrix, 423 F.3d 1247 (11th Cir 2005)(Sheriff and three fellow Sheriff's Department officers conspired under 1983 against Plaintiff and his family. Court denied summary judgment on the plaintiffs' claim of retaliation in violation of the First Amendment, their § 1983 conspiracy claim, and state law claims); Finch v. City of Vernon, 877 F.2d 1497 (11th Cir. 1989)(action against City, Mayor and City council sustained as separate Defendants for trial). Capacity does not control the elements of a conspiracy. It is whether the actor was acting under color of law either as a state agent or in concert with an individual. Liability does not arise solely out of Noles, Daugherty, or Burnett's official capacity conduct.

Noles attempts in this second reply, to insert his previous argument on a separate issue regarding [whether it was redundant to name the officers and the

10

City in its official capacity],[8] and somehow use this as a defense to the conspiracy. Noles argument is self-defeating. He states in defense of the conspiracy:

> "In federal court, the concept of capacity is relevant only to the party against whom the damages may be ultimately awarded. It has nothing whatsoever to do with the nature of the conduct by governmental actor, or whether he acted ….."

Defendant goes on to state that the conspiracy claims against Noles "is an action against the City because it was in his official capacity" (Br. at p. 12), and "requires proof that an official policy or custom of the governmental agency was the moving force of the constitutional violation". (Noles brief at p. 13).

Noles' idea on conspiracy elements is fundamentally flawed. His statement that "capacity has nothing whatsoever to do with the nature of the conduct by the government actor" is correct. Official capacity has 'nothing whatsoever to do with the elements of the conspiracy conduct by the actor'. The Supreme Court has held that a conspiracy may be charged as the legal mechanism through which to impose liability on each and all of the Defendants without regard to the capacity or person committing the particular act. Liability does not arise solely out of his own direct conduct or the policy of the City, but rather, his membership in the conspiracy. A valid conspiracy can exist from a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were

---

[8] In regards to Noles separate argument that it is "redundant and superfluous" to name the officers and the municipality for official capacity claims, Defendant should be aware that for purpose of State law claims, when instituting "a civil action against the municipality for damages suffered by him, a Plaintiff shall also join such other person or persons so liable as defendant or defendants of the civil action". Ala. Code. at 11-47-191.

officially authorized, or lawful. Monroe v. Pape, 365 U. S. 167 (1961). *See also*, United States v. Classic, 313 U. S. 299, 313 U. S. 326 (1941); Screws v. U.S., 325 U. S. 91; Williams v. United States, 341 U. S. 97, 341 U. S. 99-100 (1951). To establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that the defendants "reached an understanding to violate [his] rights." Strength, 854 F.2d at 425 (quotation omitted). The contention that a conspiracy existed which deprived the petitioner of rights guaranteed by federal law renders each member of the conspiracy vicariously liable for the effects of that deprivation. Of course, for a claim under § 1983, a conspiracy as such is not an indispensable element as it is under § 1985. Conspiracy is asserted in that situation on more or less traditional principles of partnership, joint venture, and like.

A private party involved in a conspiracy, even though not an official of the State, can be liable under a conspiracy which renders him vicariously liable for all the conduct of his co-conspirators. Richardson v Fleming, 651 F.2d 366, at 730 (5th Cir. 1981), Sparks v Duvall County Ranch, Inc. 604 F.2d 976 (5th Cir 1979)(Conspiring to violate another person's constitutional rights violates section 1983) *en banc*, aff'd sub nom., Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.ed. 2d 185 (1980)[9]; Adickes v. S.H. Kress & Co., 398 U.S. 144, 90; Strength v. Hubert, 854 F.2d 421, 425 (11th Cir.1988). The plaintiff does not have to produce

---

[9] All decisions of the Fifth Circuit rendered prior to October 1, 1981, are Circuit precedent for the Eleventh Circuit. Bonner v. City of Prichard, 651 F.2d 1206, 1207 (11th Cir. 1981).

a "smoking gun" to establish the "understanding" or "willful participation" required to show a conspiracy, <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 469 (11th Cir.1990).

Herein Helms, Noles do not challenge the claim of whether a conspiracy existed, but only whether they can be charged as conspirators because they work for the same agency and Plaintiff would be required to prove a municipal 'policy and custom'. As noted in the foregoing, offical capacity actions has nothing to do with the elements of a conspiracy nor does the policy and custom of the municipality. A distinction with a difference exists between offical capacity of the lawsuit and acting under color of law for conspiracy purpose.

Despite Noles' posturing that "no precedent is cited by Plaintiff in support of this remarkable contention", Plaintiff has set forth a host of citations squarely on point which Noles has not once disputed.

With regard to Plaintiff's contention that corporations are unable to conspire with each other, Noles does not dispute Plaintiff's additional claim that the Defendant was engaged in a criminal conspiracy. As such, the Eleventh Circuit has clearly and concisely put Defendants on notice. "We hold that it is possible for a corporation to conspire with its own officers, agents and employees, and we now adopt this exception that the intracorporate conspiracy doctrine cannot shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability." <u>McAndrew v. Lockheed Martin Corp.</u>, 206 F.3d 1031 at 1038 (11th Cir. 2000). The former Fifth Circuit recognized this exception to the [single corporate entity] in

13

two cases, one civil and the other a criminal. *See* <u>Benningfield v. City of Houston</u>, 157 F.3d 369, 378 (5th Cir.1998), *cert. denied*, __ U.S. __, 119 S.Ct. 1457, 143 L.Ed.2d 543 (1999) (applying the intracorporate conspiracy doctrine to plaintiffs' 1985(3) claims alleging the defendant supervisors conspired to deprive plaintiffs of their First Amendment and equal protection rights *but* finding the claims fell within an exception to the doctrine which arises when corporate employees act for their own personal purposes). In <u>Dussouy v. Gulf Coast Investment Corp</u>, 660 F.2d 594 (5th Cir.1981) the Court stated: "a corporation can be convicted of criminal charges of conspiracy based solely on conspiracy with its own employees." <u>Id</u>. at 603. Importantly, inasmuch as Noles does not dispute the allegation in the complaint of criminal conduct nor the cited legal authority, under Rule 8 Fed.R.Civ.P. it is deemed admitted.

     Plaintiff would briefly add that Noles' argument goes on to infer that it matters not which capacity they are named (official or individual), they both are acting as police officers from the City and this precludes a conspiracy action. This is precisely what <u>Adickes</u> is about. An individual can still act under color of law and thus a conspiracy requirment of two or more responsible persons is met. Whether it be the defective intracorporate conspiracy theory or naming the officers acting in their official capacity in concert with those acting individually under color of law, it is clearly established that a valid conspiracy claim can be asserted under the circumstances.

4.      State Law Claims of Infliction of Emotional Distress, Assualt & Battery

Defendant Noles limits this secondary reply to the issue of intentional infliction of emotional distress and disregards the assault and battery claims. Defendant goes on to allege that Plaintiff has no maintanable claim and asserted no case law to the contrary, and further, "the tort of outrage [infliction of emotinal distress] can only be recognized in three areas of wrongful conduct within context of family burial; an insurance agent coercing…; egregious sexual harassment". (Noles Br. at p. 16). Noles again greviously errs.

"Notwithstanding this narrowly cabined application of the outrage doctrine, Alabama courts have *never* held that, as a matter of law, outrage cannot and does not apply to any circumstances other than those previously recognized by the Alabama Supreme Court." Lees v. Seabreeze Healthcare Inc., 391 F.Supp.2d 1103 1103 (S.D. Alabama 2005). *See also*, Harrelson v. R.J., 882 So.2d 317, 322 (Ala. 2003); Continental Cas. Ins. Co. v. McDonald, 567 So.2d 1208 (Ala 1990) (Affirming tort of outrage when employer withheld workers compensation benefits); Baker v. State Farm General Ins. Co., 585 So.2d 804, 807 (Ala. 1991).

> "The tort of outrage has the following elements: (1) the defendant must have intended to inflict emotional distress, or should have known that his or her acts would result in emotional distress; (2) the act must be extreme and outrageous; (3) the act must have caused plaintiffs distress; and (4) plaintiffs emotional distress must have been so severe that no reasonable person could be expected to endure it."

Noles argues that regardless of the fact Plaintiff has pleaded the required requisites and inferences in her complaint, none of the common-law prerequisites for outrage are satisfied here because it does not fit within the parameters of the three examples he cites. Not only has Noles been proven to be incorrect on his limiting view of only three circumstances of which outrage can be maintained, nevertheless, at the Rule 12(b)(6) stage, the Court accepts the well pleaded allegations of the Complaint as true. Defendant may (and apparently does) dispute the veracity of plaintiff's contention in this regard. Regardless, Noles is not entitled to Rule 12(b)(6) relief on the ground that the subject conduct was not within the requisite parameters of outrage when plaintiff has clearly pleaded otherwise, and it is a fact question as to whether defendant acted in the manner alleged or not. Likewise, the third element of an outrage claim has been adequately pleaded as Helms has sufficiently alleged that she suffered severe emotional distress because of defendants' act(s) and that such was so severe, she thought she would die from suffocation and burning after being tortured with a chemical agent for seven hours and that Noles sadistic actions were so egregious as to amount to willful or malicious conduct and he was knowingly acting and engaging in bad faith.

In Lees, supra, the Court held that a Plaintiff could maintain an outrage claim based on the second prong of 'extreme and outrageous' simply because the plaintiff was fired after having enlisted in the U.S. Air Force Reserves. The

internal citation(s) of the Lees Court likewise provides numerous other circumstances of outrage claims being sustained.

Accordingly, Plaintiff has met all the required elements in her pleading. Defendant Noles' claim that Plaintiff makes no attempt to address "the fact *federal courts* in this state have noted that the Alabama Supreme Court has recognized the tort of outrage on *only three areas* …..", is nothing but an exercise in fiction. (emphasis in origional, italics added),

2. Conclusion

Noles is not entitled to qualified immunity on the First Amendment claims and Plaintiff has stated a maintainable state law claim for outrage.

The matter before the Court is a Rule 12(b)(6) motion to dismiss. As such "a plaintiff must meet only an 'exceedingly low' threshold to survive a Rule 12(b)(6) motion. United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003).

Respectfully submitted this 16th day of July, 2009.


/s/ J. CHARLES WILSON
J. Charles Wilson
Attorney for Plaintiff
2151 Government Street
P.O. Box 6375
Mobile, AL 36660
FED. I.D.# WILSJ1975
AL Bar No. ASB1975-N66J
Tel: (251) 471-8005
Fax: (251) 478-3396
T. Free 866-488-2151

## CERTIFICATE REGARDING SERVICE

I hereby certify that it is my belief and understanding that counsel for Defendant's, are participant(s) in the Court's CM/ECF program and that separate service of the foregoing document is not required beyond the Notification of Electronic Filing to be forwarded to Defendant's counsel on July 16th, 2009 upon the filing of the foregoing document.


/s/ *J. CHARLES WILSON*
J. Charles Wilson
Attorney for Plaintiff