IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBYN HELMS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ]   CV-09-BE-0863-S |
| | ] |
| BLAKE NOLES, et. al., | ] |
| | ] |
| Defendants. | ] |
| | ] |

**MEMORANDUM OPINION**

This case comes before the court on the "Motion to Dismiss of Blake Noles" (doc. 24) and the "Motion to Dismiss of Defendants T.J. Burnett, Christopher Daugherty, and City of Sumiton" (doc. 31). Plaintiff Robyn Helms brings this § 1983 and § 1985 action against Defendants Chief T.J. Burnett, Officer Blake Noles, Officer Christopher Daugherty, and the City of Sumiton. Plaintiff asserts that the Defendants violated her civil rights by, *inter alia*, inflicting cruel and unusual punishment, retaliating against her exercise of free speech, and disregarding her medical needs while she was in a Sumiton jail cell.

The court ordered the Plaintiff to show cause why the Defendants' motions to dismiss should not be granted, to which the Plaintiff responded (docs. 35 & 39). The court has reviewed the parties' filings and the applicable law. For the reasons stated below, the court will GRANT Defendant Noles' motion to dismiss (doc. 24); the court will GRANT IN PART and DENY IN PART the motion to dismiss of Defendants T.J. Burnett, Christopher Daugherty, and the City of Sumiton (doc. 31). Specifically, the court will GRANT the motion as to all claims against

Defendants Burnett and the City of Sumiton; Plaintiff's official-capacity claims against the individual Defendants; Plaintiff's first and third causes of action against Defendant Daugherty; and Plaintiff's assault and battery, intentional infliction of emotion distress, First Amendment retaliation, and conspiracy claims as to Defendants Burnett, Daugherty, and the City. The court will DENY the Defendants' motion as to Plaintiff's third cause of action–deliberate indifference–against Defendant Daugherty.  The court will simultaneously enter a separate order to that effect.

### FACTS

In reviewing a motion to dismiss, the court accepts as true the facts alleged in the complaint. *See Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).  According to the Complaint, in April 2009, Plaintiff Robyn Helms was in the custody of the Sumiton, Alabama Police Department for a misdemeanor traffic offense.  Officer Blake Noles began taunting Helms while she was in her jail cell.  Defendant Noles called Helms a "drunk bitch" and a "sorry excuse" for a woman compared to his girlfriend.  Helms responded that she was surprised that Noles had a girlfriend with his fat ass.  Noles responded "I'll show you" and "I'll shut you up and to teach you a lesson what happens to a drunk bitch."

Then, Defendant Noles sprayed Helms with a chemical agent–pepper spray–while Helms was lying on a bed in the jail cell.  Helms unsuccessfully tried to cover her body with a blanket as Noles continued to spray her with the chemical agent.  Noles laughed as he sprayed her.  As a result of the chemical spray, Helms' eyes were swollen shut and she experienced respiratory distress and severe burning over her entire body.  She began thrashing on the floor, vomiting, and screaming for medical assistance.

After about seven hours, Defendant Officer Daugherty arrived at the jail. Plaintiff Helms begged Daugherty for medical assistance. Daugherty told Helms she could take a shower but that she would have to find her own way to the shower. Neither Noles nor Daugherty provided medical assistance to Helms. After being released from custody the next day, Helms obtained medical treatment and continues to seek medical treatment for her injuries.

Plaintiff alleges that prior to Helms' injury, Defendants Chief of Police T.J. Burnett and the City of Sumiton knew of numerous incidents involving the unlawful use of force and pepper spray on citizens and inmates. Nevertheless, neither Burnett nor the City of Sumiton took affirmative action to discipline its officers or provide training on the lawful use of force.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). However, when assessesing whether qualified immunity precludes a plaintiff's § 1983 claim, the court applies a heightened pleading requirement. *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998).

In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all

factual allegations in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989). In other words, "[o]n a motion to dismiss, the facts stated in the . . . complaint and all reasonable inferences therefrom are taken as true." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (quoting *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990)). Nevertheless, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

As the Supreme Court recently elaborated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To satisfy the plausibility requirement, Plaintiff's complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

## DISCUSSION

I.   *Individual Defendants' Motions to Dismiss Official-Capacity Claims*

Plaintiff Helms has sued Defendants Chief T.J. Burnett, Officer Blake Noles, and Officer Christopher Daugherty in their official capacities. These Defendants assert that the claims against them in their official capacity are really claims against the City of Sumiton, the

governmental entity they represent. As such, the individual Defendants move the court to dismiss Plaintiff Helms' claims against them in their official capacity, because those claims are redundant in light of Plaintiff Helms' claims against the City of Sumiton.

"Official-capacity" suits against a governmental officer or employee are, in effect, suits against the governmental entity that person represents. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (holding municipalities and other governmental entities can be sued as "persons" under § 1983). Suits against a government official in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). Plaintiff Helms' official-capacity claims against the individual Defendants, therefore, are essentially identical to her claims against the City of Sumiton.

"Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citing *Graham*, 473 U.S. at 166). As such, the Eleventh Circuit in *Busby* determined that "[t]o keep both the City and the officers sued in their official capacity as defendants in [the] case would [be] redundant and possibly confusing." *Id.*

In this case, because Plaintiff Helms has brought suit against the City of Sumiton, allowing the official-capacity claims against the individual Defendants to proceed would be "redundant and possibly confusing." The court, therefore, will grant the individual Defendants' motions to dismiss Plaintiff's official-capacity claims against them, because those claims are

redundant of the claims asserted against the Defendant City.

II.     *Plaintiff's Cruel and Unusual Punishment Claims*

Plaintiff's First, Second, and Third Causes of Action allege cruel and unusual punishment and deliberate indifference claims against Defendants Noles, Burnett, Daugherty, and the City of Sumiton. Defendant Noles did not file a motion to dismiss Plaintiff's cruel and unusual punishment and deliberate indifference claims.

Defendants Burnett, Daugherty, and the City of Sumiton perfunctorily assert that the court should dismiss these claims because "these Defendants cannot be held liable under the doctrine of respondeat superior. In Monell v. New York City Dept. Social Services, 463 U.S. 658 (1978), the United States Supreme Court conclusively resolved that Congress never intended to impose vicarious or respondeat liability under 42 U.S.C. § 1983." (Defendants' Motion to Dismiss 2). However, the complete statement of the Supreme Court is "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original). A city *can* be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.

In support of her allegation that the policies of the Defendant City and Defendant Chief Burnett provide a basis for finding liability, Plaintiff makes many conclusory allegations of law that the court will not consider in deciding the motion to dismiss. *See Iqbal*, 192 S. Ct. at 1949-50. In her complaint, Plaintiff alleges that

> Defendant Noles and Defendant Daugherty have repeatedly and *unlawfully used chemical agents* against persons in their custody *with impunity from their supervisors and the City of Sumiton*. . . .
>
> *The knowledge and inaction provided a tacit authorization and ratification to the policy and custom of unrestricted and unlawful use of force by means of chemical agent for no legitimate reason which is the proximate cause of Plaintiff's injuries.*
> . . .
>
> The *City of Sumiton was negligent in ensuring that the Chief of Police instituted the proper policies and procedures to the officers of the Sumiton Police Department despite* numerous past complaints of police misconduct regarding the use of chemical agent. *It is the City of Sumiton's inaction and failure to take remedial action that has created the defacto policy and custom of turning a blind eye to the Constitutional violations* set forth herein. The City of Sumiton is sued in its official capacity for reasons that *its policy and customs and failure to take remedial action are the proximate causes of the injuries sustained by Plaintiff.*

(italics added). Plaintiff's legal conclusions are not entitled to an assumption of truth and do not provide a basis for the court to determine whether she is entitled to relief. *See Iqbal*, 129 S. Ct. at 1951.

The only *factual* statements regarding the allegation that the policies of Chief Burnett and the City caused Plaintiff's injury are her allegations that each Defendant received numerous complaints and had direct knowledge of incidents involving the unlawful use of pepper spray but neither Defendant took action to prohibit or stop the violations. However, Plaintiff's allegation is not sufficient to withstand the Defendants' motion to dismiss.

The Supreme Court rejected the argument that a supervisor's knowledge of and acquiescence to his subordinate's unconstitutional behavior amounts to the supervisor's violating the Constitution. *See Iqbal*, 129 S. Ct. at 1949 (refusing to impose supervisor liability based on supervisor's mere knowledge of his subordinate's discriminatory purpose). Plaintiff's attempt to equate knowledge of constitutional violations and municipal polices fails; accordingly, Plaintiff's

deliberate indifference and cruel and unusual punishment claims cannot survive against the motion to dismiss of Defendants City and Burnett. Thus, the court will grant the motion to dismiss Plaintiff's first, second, and third causes of action as to Defendants Chief Burnett and the City of Sumiton.

As to Defendant Daugherty, the officer who arrived at the jail seven hours after Defendant Noles initially sprayed Plaintiff with pepper spray, the court must examine Plaintiff's complaint to determine whether she sufficiently states claims of deliberate indifference and cruel and unusual punishment against Daugherty, individually.

*A. First and Third Causes of Action - Cruel and Unusual Punishment and Deliberate Indifference Before Daugherty Arrived at the Jail*

In her first cause of action, Plaintiff alleges cruel and unusual punishment through the excessive use of pepper spray. Specifically, Plaintiff states that "[t]he conduct of Defendant's [sic] Noles, Daugherty and Burnett, either jointly or severally, regarding the sadistic, malicious, unlawful use of force and excessive force, intentional infliction of physical pain and suffering *for seven hours*, constitutes cruel and unusual punishment." (emphasis added).

Plaintiff Helms has not only failed alleged facts that Defendant Daugherty employed any type of force; but also, she states that Daugherty arrived at the jail "*[a]fter approximately seven hours* of Defendant Noles watching and listening to Plaintiff suffering." (emphasis added). Thus, Plaintiff has not stated a claim against Daugherty for the alleged cruel and unusual punished that occurred *before* he arrived at the jail.

Similarly, in her third cause of action, Plaintiff alleges that Defendant Daugherty disregarded her medical needs for seven hours after Noles sprayed her with the pepper spray.

8

However, Daugherty could not disregard Plaintiff's medical needs if he was not present to be aware of and disregard those needs. Accordingly, the court will dismiss Plaintiff's first and third causes of action against Defendant Daugherty.

 *B. Plaintiff's Second Cause of Action - Deliberate Indifference After Daugherty Arrived at the Jail*

 To prove that the Defendant Daugherty was deliberately indifferent to her serious medical needs, Plaintiff's complaint must allege facts showing "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Townsend v. Jefferson County*, 582 F.3d 1252, 1258 (11th Cir. 2009) (quotation omitted). Additionally, Plaintiff Helms must allege facts that demonstrate a causal connection between Daugherty's deliberate indifference and her injury. *See id.* at 1259.

 Plaintiff has alleged sufficient facts to maintain her deliberate indifference claim against Defendant Daugherty. Plaintiff alleges that shortly after Daugherty arrived on duty, Noles told him that he had sprayed Plaintiff with pepper spray. The facts show that Daugherty had knowledge of Plaintiff's risk of serious harm because he saw that Plaintiff was in distress: according to the complaint, her eyes were swollen shut and she was vomiting and begging him for assistance. Also, the facts allege that he disregarded the risk by not providing her with medical assistance and, with knowledge that she could not see, told Plaintiff that she had to find her own way down the hall to the shower. Further, Plaintiff's complaint shows that Daugherty acted intentionally rather than negligently: Plaintiff Helms alleges that Daugherty "took sadistic pleasure at Plaintiff feeling her way down [the] hallway while injured and with her eyes swollen shut." Finally, Plaintiff sufficiently alleges the requisite causal connection by stating that the day

after she left Defendant Daugherty's custody, she obtained medical treatment for her injuries. Because Plaintiff's complaint alleges facts sufficient to state a deliberate indifference claim against him, the court will deny Defendant Daugherty's motion to dismiss Plaintiff's second cause of action.

III.  *Plaintiff's First Amendment Retaliation Claim*

    A. *Individual Defendants' Entitlement to Qualified Immunity*

Plaintiff's fourth cause of action arises out of Officer Noles' decision to spray her with pepper spray and Officers Noles' and Daugherty's decisions to deny her medical assistance. Plaintiff Helms claims that Defendants Noles and Daugherty retaliated against her in violation of her rights under the First Amendment of the Constitution.[1] Specifically, she alleges that Defendant Noles retaliated by spraying her with pepper spray after she told him "she was surprised that he had a girlfriend with his fat ass." Also, she states that he retaliated by refusing to provide medical assistance and threatening to spray her again after she begged, cried, and screamed for medical assistance. Further, Plaintiff Helms asserts that in response to her pleas for medical assistance, Defendant Daugherty retaliated by telling her she could take a shower only if she could find her own way to the shower.

---

[1]Neither Plaintiff nor Defendants discussed the issue of whether Plaintiff Helms' complaint stated a First Amendment retaliation claim against Defendant Chief T.J. Burnett, individually. The court finds that Plaintiff has failed to allege facts that associate Burnett with the alleged retaliation; thus, Plaintiff has not stated a claim against Chief Burnett upon which this court can grant relief. Moreover, even when construed in a light most favorable to Helms, the facts do not show a "widespread" and "obvious" history of jail officials spraying pepper spray and denying medical treatment in retaliation for protected speech. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Therefore, to alleviate some of the confusion from Plaintiff's First Amendment retaliation prayer for relief "that after trial by jury on the issues herein, judgment be entered against Defendant's [sic], individually," the court *sua sponte* dismisses this claim against Defendant Burnett.

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted). "Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" *Id*. (quoting *GJR Invs., Inc., v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)).

    *1. The Officers' Burden*

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Government officials act within the scope of their discretionary authority if "the actions were (1) 'undertaken pursuant to the performance of [their] duties' and (2) 'within the scope of [their] authority.'" *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1998)). In determining whether these requirements are met, the court does not analyze whether the officer actually acted lawfully. *See Sims v. Metro. Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992). Rather, the issue is whether "the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [the officers'] discretionary

duties." *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).

In the instant case, Plaintiff Helms asserts that Defendant Noles, while on duty at the Sumiton jail, sprayed her with pepper spray; then, Defendant Daugherty "arrived on duty." She also asserts that Defendants Noles and Daugherty refused to provide medical assistance after she begged for help from her jail cell. Moreover, Plaintiff states in her complaint that at all relevant times, Defendants Noles and Daugherty were police officers acting under color of state law when they allegedly violated her First Amendment rights. Thus, Plaintiff has alleged facts that spraying pepper spray and refusing to provide medical care are *within* the scope of a Sumiton police officer's authority. Therefore, the court concludes that Defendants Noles and Daugherty have met their burden of showing that they acted within the scope of their discretionary authority as police officers.

*2. Helms' Burden*

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The Supreme Court has articulated a two-part test[2] to determine whether qualified immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court must determine whether "the facts alleged show the officer's conduct violated a constitutional right" and "whether the right was clearly established." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Because of the facts in the instant case, the court will first determine whether Helms' complaint states a

---

[2]Although the test has two parts, the court can use its discretion to decide which part of the test to analyze first. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

claim that the Defendants violated her First Amendment rights.

*A. First Amendment Violation*

An inmate, detainee, or other person who asserts a First Amendment retaliation claim against law enforcement officers or jail administrators must show that "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

*Whether Helms' speech was constitutionally protected.*

Unless an inmate speaks "on a matter of public concern," his speech is not entitled to First Amendment protection. *See Robinson v. Boyd*, 276 Fed. App'x 909, 910 (11th Cir. 2008).[3] In determining whether an inmate speaks on a matter of public concern, the threshold issue is whether she speaks "primarily as a citizen on behalf of the public" or as an inmate "upon matters of personal interest." *See Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir. 2000) (defining "matter of public concern" regarding a government employee's speech). Similarly, inmate speech that is unrelated to a matter of public concern is not constitutionally protected speech. *See Robinson v. Boyd*, 276 Fed. App'x 909, 910 (11th Cir. 2008) (rejecting inmate's First

---

[3]*Contra Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2008) (concluding that "a prisoner's speech can be protected even when it does not involve a matter of public concern"); *see Gill v. Pildlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (applying the matter of public concern standard to prisoner speech).

Amendment retaliation claim because his speech was unrelated to a "matter of public concern").

Examples of inmate speech on a matter of public concern, and thus afforded First Amendment protection, include (1) filling out a grievance against a supervisor, (2) actively encouraging other inmates to sign a petition in protest of their treatment, and (3) preparing a grievance on behalf of another inmate. *See Bridges v. Russell*, 757 F.2d 1155, 1157 (11th Cir. 1985).

In the instant case, Plaintiff Helms asserts that her statement–"I am surprised that you have a girlfriend with your fat ass"–in response to Officer Noles' taunting was protected speech. She also alleges that the First Amendment protects her request for medical assistance. Neither statement, however, relates to a matter of public concern. *See Smith*, 532 F.3d at 1277 (holding that insubordinate remarks in violation of prison regulations are not protected speech); *Robinson v. Boyd*, 276 Fed. App'x 909, 909-10 (11th Cir. 2008) (holding that an inmate's request for warming gear was not a matter of public concern).

Viewing the facts in the light most favorable to Helms, the court concludes that Plaintiff Helms' speech was not constitutionally protected because she has not alleged facts showing that she spoke on matters of public concern. Because Plaintiff Helms has not demonstrated a violation of a right protected by the First Amendment, the court need not proceed to an analysis of whether the law was clearly established. Likewise, the court need not consider whether the alleged spraying of pepper spray and denial of medical assistance were retaliatory.[4] The court

---

[4]Plaintiff argues that because she alleges that the individual Defendants retaliated for a subjectively "malicious and sadistic purpose," Defendants' qualified immunity evaporates; however, the Eleventh Circuit only considers the Defendants' "malicious and sadistic" subjective motivation when the Plaintiff first alleges a violation of the Eighth Amendment. *See, e.g., Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). As to a First Amendment retaliation claim,

concludes that Defendant Noles and Daugherty are entitled to the protection of the defense of qualified immunity; thus, the court will grant their motions to dismiss Plaintiff's First Amendment retaliation claim.

### B. Viability of Claim as to Defendant City of Sumiton

Even apart from the qualified immunity defense, Plaintiff's allegations fail to establish a violation of her First Amendment rights because her speech did not involve a matter of public concern. *See Robinson*, 276 Fed. App'x at 910. Having found that Plaintiff Helms has failed to state a First Amendment retaliation claim, the court will dismiss that claim as to Defendant City of Sumiton.

### IV. Plaintiff's Conspiracy Claim and the Intracorporate Conspiracy Doctrine

Plaintiff's fifth cause of action asserts claims through 42 U.S.C. §§ 1983 and 1985 that the Defendants conspired to violate Plaintiff's constitutional rights. Defendants assert that Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine because at the time of the alleged conspiracy, the individual defendants were all police officers for the City of Sumiton.

Under the intracorporate conspiracy doctrine,

> a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. This doctrine stems from basic agency principles that attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor. The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself.

---

the court applies an "objective standard [that] would be rendered meaningless if a plaintiff could overcome a [motion to dismiss] based on qualified immunity by injecting the defendant's state of mind into the pleadings." *See Hansen v. Soldenwagner*, 19 F.3d 573, 578 (11th Cir. 1994).

*Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) (citations and quotation omitted). The Eleventh Circuit has applied the intracorporate conspiracy doctrine to § 1983[5] and § 1985 conspiracy claims. *See id.* at 770; *Albra*, 232 Fed. App'x at 891.

The plaintiff in *Dickerson* claimed that he was demoted because of a "conspiracy" among county jail officers. 200 F.3d at 764. The Court applied the intracorporate conspiracy theory and reversed and vacated the district court's entry of judgment for Dickerson on the § 1985 claim because Dickerson did not establish the existence of a conspiracy. *Id.* at 764, 770 (holding that the intracorporate conspiracy doctrine applies to a county and its employees).

Similarly, Plaintiff Helms has not alleged facts sufficient to withstand the Defendants' motion to dismiss her conspiracy claims. To substantiate her conspiracy claim, Helms "must show an agreement between 'two or more persons' to deprive [her] of [her] civil rights." *See Dickerson*, 200 F.3d at 767 (quoting 42 U.S.C. § 1985(3)). Plainiff's conspiracy claims fail because they are against actors who are part of a single, public entity–the City of Sumiton. *See id.* at 768. Helms has essentially alleged that the Defendants conspired with themselves; thus, she has not shown the requisite agreement between two or more persons.

Because all of the individual Defendants were employees of the City of Sumiton during the alleged conspiracy, the court finds that the intracorporate conspiracy doctrine applies; therefore, the court will dismiss Plaintiff Helms' conspiracy claim.

---

[5]To establish a case of conspiracy under 42 U.S.C. § 1983, Plaintiff Helms must allege that the Defendants "reached an understanding to violate [her] rights." *Albra v. City of Fort Lauderdale*, 232 Fed. App'x 885, 890 (11th Cir. 2007). Although the parties did not brief the issue, the court notes that Helms has made conclusory allegations of conspiracy but has not alleged facts showing an agreement between the Defendants.

*V.	Plaintiffs's Assault and Battery Claim against Defendants Noles, Burnett, Daugherty, and the City of Sumiton*

Plaintiff's asserts assault and battery under Alabama law in her sixth cause of action. Again, the court notes that Defendant Noles, the officer who sprayed her with pepper spray, did not file a motion to dismiss Plaintiff's assault and battery claim.

*A. Claim against Burnett and Daugherty*

Defendants Burnett and Daugherty assert that "Plaintiff's sixth cause of action [assault and battery (outrage)] against Defendants Burnett and Daugherty fail to state a claim against these Defendants upon which relief can be granted." Under Alabama law, to survive Defendants' motion to dismiss her assault and battery claim, the complaint must allege "(1) that the defendant[s] touched the plaintiff; (2) that the defendant[s] intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." *See Harper v. Winston County*, 892 So. 2d 346, 353 (Ala. 2004). Plaintiff has failed to allege facts that either Defendant Burnett or Daugherty touched her; thus, her complaint fails to state a claim of assault and battery against them. Accordingly, the court will grant the motion to dismiss the assault and battery claims as to Defendants Daugherty and Burnett.

*B. Claim against the City of Sumiton*

Citing Alabama Code § 11-47-190, Defendant City of Sumiton asserts that Plaintiff's complaint fails because municipalities cannot be liable for intentional torts of their officers or employees. Section 11-47-190 "limits the liability of municipalities to injuries suffered through 'neglect, carelessness or unskillfulness.'" *Hilliard v. City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991) (quoting Ala. Code § 11-47-190). Plaintiff Helms does not allege negligence, but

17

rather repeatedly asserts that the individual Defendants acted intentionally, maliciously, and deliberately; thus, she has not alleged actionable negligent, careless, or unskillful conduct against the City of Sumiton. Further, because assault and battery are *intentional* torts, Plaintiff cannot maintain an assault and battery action against the Defendant City of Sumiton. Accordingly, the court will grant the City's motion to dismiss Plaintiff Helms' assault and battery claims against it.

*VI.  Plaintiff's Intentional Infliction of Emotional Distress/Outrage Claims*

Plaintiff Helms alleges that the Defendants' conduct constitutes the state-law tort of outrage/intentional infliction of emotional distress.[6] "Outrage is an extremely limited cause of action." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). To state a claim of outrage, a plaintiff must show that:

> (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) . . . the distress was severe.

*Harris v. McDavid*, 553 So. 2d 567, 569-70 (Ala. 1989). With respect to the second requirement, the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981).

Although Plaintiff Helms states that she suffered physical pain from being sprayed with pepper spray, she fails to allege that she was subjected to severe emotional distress. Thus, she has not stated facts to satisfy the fourth requirement of an intentional infliction of emotional

---

[6] The tort of outrage under Alabama law is the same cause of action as intentional infliction of emotional distress. *See Harrelson v. R.J.*, 882 So. 2d 317, 321 (Ala. 2003).

distress (IIED) claim. Thus, Plaintiff Helms has failed to show that she is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). Accordingly, Plaintiff Helms has failed to state a claim of IIED upon which relief can be granted, and the court will grant the both motions to dismiss as to her IIED claim.

## CONCLUSION

For the reasons stated above, the court will GRANT Defendant Noles' motion to dismiss Plaintiff's official-capicity, First Amendment retaliation, conspiracy, and IIED claims. Plaintiff's cruel and unusual punishment, deliberate indifference, and assault and battery claims remain against Defendant Noles.

The court will GRANT IN PART and DENY IN PART the motion to dismiss of Defendants T.J. Burnett, Christopher Daugherty, and the City of Sumiton; specifically, the court will GRANT the motion as to 1) the official-capacity claims against the individual Defendants; 2) the first and third causes of action against Defendant Daugherty because he was not present when the alleged violations occurred; 3) the first, second, and third causes of action against the Defendant City because Plaintiff has not shown that a Sumiton municipal policy caused her injury; 4) the first amendment retaliation claim against all Defendants; 5) the conspiracy claims against all Defendants; 6) the assault and battery claims against Defendants Burnett, Daugherty, and the City; and 7) the intentional infliction of emotion distress claims against all Defendants. In all other respects, the court will DENY the motion.

Thus, no claims remain against Defendants City and Chief Burnett. The sole claim remaining against Defendant Daugherty is the deliberate indifference claim stated in Plaintiff's

second cause of action. Additionally, plaintiff's cruel and unusual punishment, deliberate indifference, and assault and battery claims remain against Defendant Noles.

DONE and ORDERED this 8th day of December, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE